**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DANIEL ORTIZ, SR., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 09-cv-2636 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants' motion for reconsideration [69] of the portion of the Court's September 22, 2010 Memorandum Opinion and Order that denied summary judgment on Plaintiff's claims against Defendant Hicks for use of excessive force and false arrest [65]. For the following reasons, Defendants' motion for reconsideration [69] is respectfully denied.

**I.     Background**

Because the relevant facts are set forth in the September 22, 2010 order [65][1], the Court need not repeat them in full here. Briefly, this case arises out of a visit that several Chicago police officers (the "Individual Defendants") paid to Plaintiff's home. Individual Defendants had a warrant to search Plaintiff's son's apartment, but not Plaintiff's apartment, which was located immediately above his son's apartment. Plaintiff's complaint alleged unlawful entry, excessive force/failure to intervene, false arrest, and a due process claim against the Individual Defendants. On February 5, 2010, Defendants moved for summary judgment [48]. During the course of briefing on that motion, Plaintiff abandoned his due process claim. The Court ultimately granted Defendants' motion as to Defendants Hall and Edwards, and granted

---
[1] The opinion is reported on Westlaw as *Ortiz v. City of Chicago*, 2010 WL 3833962 (N.D. Ill. Sept. 22, 2010).

summary judgment as to the unlawful entry claim against Defendant Hicks. See [65] at 25. However, the Court denied the motion as to the false arrest and excessive force claims against Defendant Hicks. *Id.* It is these aspects of the Court's prior ruling that are the subject of the instant motion.

## II. Legal Standard

Because the Court's September 22, 2010 opinion did not dispose of this case in its entirety, the Court reviews Defendants' motion for reconsideration under Federal Rule of Civil Procedure 54(b), which states in relevant part: "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Accordingly, under Rule 54(b), the Court may exercise its inherent authority to reconsider its interlocutory orders because such orders may be revised at any time before the Court enters a final judgment. See *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 12 (1983) ("every order short of a final decree is subject to reopening at the discretion of the district judge"); *Sims v. EGA Prods., Inc.,* 475 F.3d 865, 870 (7th Cir. 2007) ("nonfinal orders are generally modifiable").

However, it is well established in this district and circuit that "'[m]otions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence.'" *Conditioned Ocular Enhancement, Inc. v. Bonaventura*, 458 F. Supp. 2d 704, 707 (N.D. Ill. 2006) (quoting *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.,* 90 F.3d 1264, 1269 (7th Cir. 1996)). In regard to the "manifest error" prong, the Seventh Circuit has explained that a motion to reconsider is proper only when "the Court has patently

misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990); see also *Oto v. Metropolitan Life Ins. Co.,* 224 F.3d 601, 606 (7th Cir. 2000) ("A 'manifest error' is not demonstrated by the disappointment of the losing party," instead it "is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'"); *Bilek v. American Home Mortg. Servicing,* 2010 WL 3306912, at *1 (N.D. Ill. Aug. 19, 2010)**.** And with respect to the second prong, the court of appeals has explained that a motion to reconsider may be appropriate if there has been "a controlling or significant change in the law or facts since the submission of the issue to the Court." *Id.* Because the standards for reconsideration are exacting, our court of appeals has stressed that issues appropriate for reconsideration "rarely arise and the motion to reconsider should be equally rare." *Id*. Defendants do not invoke a change of law or the availability of new facts; thus, the Court's consideration is limited to whether the Court previously committed "manifest error." In performing this analysis, the Court keeps in mind that "[r]econsideration is not an appropriate forum for rehashing previously rejected arguments." *Caisse Nationale de Credit Agricole*, 90 F.3d at 1270.

## III. Analysis

### A. Excessive Force Claim

Plaintiff's excessive force claim is based in part on his allegations that his wrist and back were injured when Defendant Hicks "pushed and tackled [Plaintiff] onto a glass table with iron chairs, and pinned him to the floor." Pl. SOF at ¶¶ 13; 17. Defendants argue that the Court erred in denying summary judgment on the excessive force claim against Defendant Hicks because Plaintiff is bound by his own testimony "that he tripped and fell and no excessive force was used

to detain him." Def. Mot. [69] at 2. In its previous Order, the Court found that there was a factual dispute regarding whether Plaintiff fell or was taken down by Hicks intentionally. See [65] at 6-7 and n.7. Defendants' motion for reconsideration is based on the following snippets of testimony from Plaintiff's deposition:

> Q: After Officer [Hicks] tells you, you know, "I don't have to show you a warrant," or however you described it, what happens next?
> A: When he says that, that's when they grabbed me this way and the back of me hit the glass table that was there in the living room. The glass table and the chairs are all iron. And when they grabbed me, that's when they grabbed me—[Hicks] was the one that grabbed me. And then I don't know if he, like, put my arms this way and that's when I was pinned down to the floor facing up."
> Q: Officer [Hicks] is the one who grabbed you?
> A: Grabbed me, yeah.
> Q: And I'm sorry. I – he first grabbed your arm? How did --
> A: This arm was coming like this.
> Q: Officer [Hicks] grabbed your right arm and took it behind you?
> A: Right.
> Q: And then Officer [Hicks] did what?
> A: **And that's when I fell to the floor**. And No. 3 was on my rear by my legs, and [Hicks] was on top of me. And then I kept asking them when I was laying on the floor already and they were trying to pin the cuffs on me, I asked them, "Where's the warrant? I just want to see the warrant." And then he told me to shut up, that he was going to kick my ass, and that was it."

(Pl.'s Dep. at pp 67:2 – 68:8) (emphasis added).
\* \* \*
> Q. Right. What I'm wondering is, you're standing up initially. Officer [Hicks] grabs your right hand?
> A. This arm (indicating).
> Q. Brings it behind you?
> A. Right to bring me down.
> Q. **And then do you trip?**
> A. **Maybe, yes, yes.**
> Q. All right. And then you go to the ground?
> A. I go to the ground.

(*Id*. at 70:10-19) (emphasis added)
\* \* \*
> Q: When you tripped and went down to the ground, you hit a table, correct?
>     Mr. Lipschultz: Form. Objection, form. You may answer.
> A: Yes.

4

Ex. B at 73:13-18.

As an initial matter, Defendants argued in their motion for summary judgment that Plaintiff "tripped and fell to the ground" on his own. See Def. Mem. [49] at 5-6; Def. Resp. Pl. SOF at ¶ 14 ("Plaintiff's own testimony is that he tripped and fell to the floor."). The Court already considered, and rejected, the argument that Plaintiff "admitted" during his deposition that he fell on his own. A motion for reconsideration is not a "forum for rehashing previously rejected arguments," *Caisse Nationale de Credit Agricole*, 90 F.3d at 1270, which is precisely what Defendants have done here.

In any event, the Court disagrees that the above testimony unequivocally demonstrates that Plaintiff "tripped and fell and [therefore] no excessive force was used to detain him." (Def. Mot. [69] at 2). This aspect of Defendants' motion is based entirely on isolated snippets of Plaintiff's testimony; namely his use of the phrase "I fell" and his agreement with an attorney's questions regarding whether he "tripped." In fact, with regard to the first snippet of testimony above, while the Court has reproduced 30 lines of testimony, Defendants only give the Court these two:

> Q: And then Officer [Hicks] did what?
> A: **And that's when I fell to the floor**.

(Pl.'s Dep. at pp 67:22-23). Viewing the portions of Plaintiff's testimony identified above, and making all reasonable inferences in Plaintiff's favor, the Court could certainly infer that Plaintiff "fell" not on his own accord, but because Hicks tackled him down to the ground. For instance, Plaintiff testified that Hicks "grabbed me this way and the back of me hit the glass table that was there in the living room." (Pl. Dep. at 67:5-8). That testimony connects Hicks' contact with Plaintiff to Plaintiff's fall to the floor. (See also Pl. Dep. at 67:19-23 (Plaintiff testified that he "fell to the floor" only after Hicks had "grabbed [his] right arm and took it behind [him].").

5

Furthermore, Plaintiff's testimony that he "fell" and that he "tripped" is not inconsistent with his allegation that Hicks *caused* him to "fall" or "trip."[2] Summary judgment on Plaintiff's excessive force claim is not warranted simply because he chose to use the word "I fell" instead of a phrase like "I was tackled" at certain points in his deposition.[3]

Next, Defendants ask the Court to consider a "new argument" that they did not make earlier—that "even if some force was used to effect Plaintiff's arrest, the amount of force was reasonable as a matter of law." Def. Mot. at 7. Defendants did not make this argument in the initial round of briefing. See [65] at 18.

The Seventh Circuit teaches that a district court may, "in its discretion, allow a party to renew a previously denied summary judgment motion or file successive motions, particularly if good reasons exist." *Whitford v. Boglino*, 63 F.3d 527, 530 (7th Cir. 1995); see also *Grayson v. O'Neill,* 308 F.3d 808, 817 (7th Cir. 2002). In *Whitford*, the Seventh Circuit acknowledged three specific grounds for allowing a renewed or successive summary judgment motion: 1) when the controlling law has changed; 2) when new evidence has been discovered; and 3) when allowing such a motion would be necessary to correct a clear error or prevent a manifest injustice. 63 F.3d at 530. This list was not meant to be exhaustive. *Id*. Defendants are correct that it is within the Court's discretion to allow them to raise this new argument in a motion for reconsideration. *Id.* (district court "did not abuse its discretion by allowing the defendants to submit a successive

---

[2] Put another way, the phrase "I fell" is not limited to those occasions when an individual falls due to his own clumsiness. Neither is the word "trip." See, *e.g.* Rule 57, 2010-11 Official NHL Rulebook, available at http://www.nhl.com/ice/page.htm?id=27011 ("Tripping: A player shall not place the stick, knee, foot, arm, hand or elbow in such a manner that *causes his opponent to trip or fall*.") (emphasis added).

[3] Defendants take issue with the fact that the Court quoted a portion of the arrest report in which an officer utilized the term "emergency takedown handcuffing" in determining that a question of fact existed regarding whether Plaintiff fell on his own or whether he was intentionally taken down. See [65] at 7; 18. Defendants argue that this statement is inadmissible hearsay that should not have been considered by the Court when it ruled on the summary judgment motion. Def. Mot. [69] at 3-4. As explained above, Plaintiff's testimony alone was sufficient to demonstrate the existence of a genuine issue of material fact.

motion for summary judgment" because defendants "presented a new and (in the eyes of the district court) more convincing legal argument" in the successive motion).

However, under the present circumstances, the Court would not permit Defendants to raise this new argument. Primarily, Defendants offer no "good reason[]" (*Whitford*, 63 F.3d at 530) why the Court should allow them to do so. Defendants identify no change in the law, no new facts, and no "injustice" that would result absent the Court's consideration of their new argument. *Id*. Further, Defendants do not explain why they could not have made this argument on the first go-round.

For the sake of completeness, however, the Court will explain why Defendants' "new argument" would fail at the summary judgment stage in any event. "An officer's use of force is unreasonable from a constitutional point of view only if, 'judging from the totality of circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest.'" *Gonzalez v. City of Elgin*, 578 F.3d 526, 539 (7th Cir. 2009) (quoting *Lester v. City of Chicago,* 830 F.2d 706, 713 (7th Cir. 1987)). In *Gonzalez*, the Seventh Circuit explained the reasonableness inquiry as follows:

> The reasonableness inquiry involves a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. We must give careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. We also bear in mind that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation. *A factual inquiry into an excessive force claim nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom.*

*Id*. (emphasis added; internal citations and quotations omitted).

The facts presented to the Court on summary judgment do not unequivocally show that Hicks' conduct was reasonable as a matter of law. The Court described these facts in detail in its prior opinion. Briefly, Hicks was pursuing Ortiz Junior—the target of the warrant who Hicks believed could be armed—into Plaintiff's second floor apartment. Someone from outside yelled "Open the goddamn door. This is the Chicago police, the police." Pl. Resp. Def. SOF ¶ 25. Upon opening the door, Plaintiff did not block the officers from entering the second floor residence, nor did Plaintiff push the officers when they entered. Pl. SOAF ¶ 9-10. Plaintiff repeatedly asked for a warrant but was told to get on his knees with his face down. Def. Resp. Pl. SOAF ¶¶ 26-28. At this point, Ortiz Junior was standing behind Plaintiff, within arm's reach. It is unclear whether Hicks tackled Plaintiff (or whether Plaintiff fell) before or after Ortiz Junior had been secured and handcuffed. See Pl. Resp. Def. SOF ¶ 31; Def Resp. Pl. SOAF ¶ 8.5; Pl. Dep. at 64-68.

With these facts in mind, the Court could not hold that Hicks' use of force was reasonable as a matter of law. There is no evidence that Hicks considered Plaintiff to be a threat on his own, and if the target of the warrant had already been secured, Hicks does not explain why any force was required to subdue Plaintiff. Further, while it is true that Hicks did not punch or kick Plaintiff, the Court must construe the record in favor of Plaintiff, and on the basis of the summary judgment record, a jury could find that Hicks tackled Plaintiff into an iron table and chair, injuring his back and wrist. In order to decide whether that amount of force was required, the factfinder will need "to sift through disputed factual contentions, and to draw inferences therefrom," *Gonzalez*, 578 F.3d at 539, which the Court may not do at the summary judgment stage. Similarly, the Court could not find as a matter of law that the force that Hicks used was undoubtedly "reasonable as part of a protective sweep." (Def. Mot. at 10 (citing *Maryland v.*

*Buie*, 494 U.S. 325 (1990)). For, if the target of the search warrant (Ortiz Junior) had already been secured, the concern underlying the "protective sweep" doctrine—namely, officer safety—would not necessarily be implicated. *Buie*, 494 U.S. at 334 (under "protective sweep" doctrine, officers permitted to "to take reasonable steps to ensure their safety after, and while making, the arrest"); see also *Leaf v. Shelnutt*, 400 F.3d 1070, 1086 (7th Cir. 2005).

B.     **False Arrest Claim**

Next, Plaintiffs argue that the Court committed a manifest error in its September 22, 2010 opinion by denying summary judgment as to Defendant Hicks on the false arrest claim. Plaintiff was arrested for violating 720 ILCS 5/31-1(a). That law provides that a person commits a Class A misdemeanor if he "knowingly resists or obstructs" the performance of "any authorized act" within the officer's official capacity, so long as the person knows that the person being resisted is a police officer. The argument that Defendants present in their motion for reconsideration ([69] at 4-7) is *identical* to the argument that they made in their initial motion for summary judgment ([49] at 8-10). In both motions, Defendants argue that Plaintiff's act of "standing between Defendant Hicks and the target of the warrant" after being ordered to move was the "physical act" of obstruction required to trigger liability under the statute. See *People v. Hilgenberg*, 585 N.E.2d 180, 183-84 (Ill. App. Ct. 1991); *People v. Stoudt*, 555 N.E.2d 825 (Ill. App. Ct. 1990)). The Court considered (and rejected) this very argument when it ruled on Defendants' initial motion. See [65] at 15-16.

Again, the Court stresses that a motion for reconsideration is not a "forum for rehashing previously rejected arguments," *Caisse Nationale de Credit Agricole*, 90 F.3d at 1270, which is what Defendants have again done here. In its motion for reconsideration, Defendants discuss the very Illinois cases that this Court reviewed and discussed in its prior opinion. Defendants do not

9

argue that the Court's opinion evidenced a "wholesale disregard, misapplication, or failure to recognize [that] controlling precedent," *Oto,* 224 F.3d at 606, and Defendants do not assert that (or explain how) the Court "patently misunderstood" its prior arguments. *Bank of Waunakee*, 906 F.2d at 1191.

\*   \*   \*

Finally, Defendants renew their request for protection under the doctrine of qualified immunity. The Court's decision to deny Hicks' "new" and renewed arguments in support of summary judgment are in large part motivated by a concern that was also present in the initial round of briefing—the "murky factual picture" ([65] at 24) that Defendants presented to the Court. That picture has not been clarified in Defendants' motion for reconsideration.[4] The Court has already explained why the murky factual record prevented the Court from holding that Hicks is entitled to the defense of qualified immunity (*id*. at 24-25), and it will not do so again here.[5]

---

[4] In fact, Defendants continue to rely on the very statements of facts and supporting materials that they filed in support of their motion for summary judgment.

[5] In their response to Defendants' motion for reconsideration ([72] at 6), Plaintiff asserts that "Defendants motion to reconsider was clearly in violation of the applicable standard and constituted an unfair waste of the Plaintiff's valuable time and resources" and therefore requests that "Defendants be ordered to pay all attorney's fees incurred in responding to Defendants' frivolous motion." In essence, this request is akin to one for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure. It is inappropriate to seek such relief in a response brief. If Plaintiff believes that he can satisfy the "high burden of showing that Rule 11 sanctions are warranted," *Lundeen v. Minemyer,* 2010 WL 5418896, at *3 (N.D. Ill. Dec. 17, 2010) (citing *Federal Deposit Ins. Corp. v. Tekfen Const. and Installation Co., Inc.,* 847 F.2d 440, 444 (7th Cir. 1998)), he may seek that relief by filing a separate motion.

**IV.     Conclusion**

For the reasons set forth above, Defendants' motion for reconsideration [69] is respectfully denied.

Dated:  May 18, 2011      _____
                                            Robert M. Dow, Jr.
                                            United States District Judge